## GILBERT J. BOGERT *vs.* LIVONIA A. GULICK.

The legal incapacity of married women to make valid contracts is the same now as it was before the statutes of 1860 and 1862, unless the contracts relate to their business or separate estates.

Except in the instances where the transaction concerns her separate business, or her separate estate, the obligations of a married woman are void.

Where, in an action upon a promissory note made by a married woman, it was found by the court, and the evidence fully warranted the finding, that the note was not made or given in any business of the defendant; that neither she nor her separate estate derived any benefit therefrom; that no consideration was received by her for it; that it was not stated, in the note, that she charged, or intended to charge, her separate estate with the payment thereof; that the policy, to procure which the note was made, was not issued; and that the note was diverted from its intended use, by a third person who, for his own benefit, sold it to the plaintiff; *held* that it followed, from these facts, that the note never had any validity or legal inception, and it was absolutely void.

At common law, a married woman cannot be a party to a bill or note; and the contracts she is enabled, by statute, to make, are such, only, as are made in the business she conducts on her own account, or such as relate to her separate property.

She is not enabled to give an accommodation note, nor one unconnected with her separate business or property; and a person taking such a note, though *bona fide* and for value, cannot recover upon it, against her.

The case of *The Corn Exchange Ins. Co.* v. *Babcock*, (42 *N. Y.* 613,) distinguished from this.

THIS is an action on a promissory note for $395.81, dated New York, 8th July, 1869, at four months, to order of M. J. O'Leary & Co., and endorsed by them and Henry B. Ogden, and Timothy Cohalen.

Bogert *v.* Gulick.

The defendant's name was signed to the note by her husband, as her agent; the defendant then was and still is a married woman, the wife of Egbert Gulick. The note was made and handed to Timothy Cohalen, to be by him delivered to the Traveller's Insurance Company, in payment of the first annual premium, for an insurance policy on the life of Egbert Gulick, to be issued by said company to said Egbert Gulick, in case that company, who had examined said Gulick, should conclude to issue said policy. No policy was issued. Cohalen diverted the note to his own use. No consideration whatever was received by the defendant for said note; nor was it, nor were the proceeds, applied to the benefit of the defendant's separate estate, or used in her business. She conducted, in her own name, the business of malting grain at Starkey, Yates county, but was never indebted to Ogden or Cohalen. Such business was carried on for her by her husband, as her agent. In that business her notes were sometimes made, and were payable at the First National Bank of Canandaigua, where she kept her bank account. The plaintiff purchased the note before maturity, and at the time of such purchase the holder represented to him that the note was a *bona fide* note, given for a fair business transaction. The plaintiff had no notice of the facts touching the origin of the note.

It is also found by the court below that the husband and agent of the defendant came down, with the consent of his wife, (the defendant,) to get his life insured. That he was examined, and the agents of the company told him they would insure him for five years, but would consult over insuring him for his life. That he made this note, and gave it to Cohalen, who acted as the agent of the husband, for procuring, on his behalf, the policy, and who had introduced him to the company, as the payment for the first year's premium, and Cohalen was to forward the policy. When the husband returned home he informed his wife of what he had done, to which

she made no objection. The policy was not issued nor forwarded to him, but the note was converted by Cohalen to his own use, and sold to the plaintiff, who took the same without notice of the want of consideration thereof, or of its misapplication. The judge, at the circuit, dismissed the complaint, to which the plaintiff excepted; and, after the judgment, he appealed.

*D. McMahon*, for the appellant.

*J. W. Feeter*, for the respondent.

*By the Court*, FANCHER, J. The defendant did not, on the face of the note, charge, in express terms, her separate estate. The case of the *Corn Exchange Ins. Co.* v. *Babcock*, (42 *N. Y.* 613,) is not, therefore, authority against her defence. Had she made the note a charge on her separate estate, by its terms, she might perhaps, be estopped from asserting that it was not given for the benefit of her separate estate. (*Todd* v. *Ames*, 60 *Barb.* 462. *Foster* v. *Conger*, 61 *id.* 147.) The note itself bears no evidence that the defendant charged, or intended to charge, her separate estate. It is clear, upon the evidence, that the note was not used in reference to, or for the benefit of, the business or separate estate of the defendant. It does not help the plaintiff to show that she conducted business on her own account and in her own name; nor that her husband, as her agent, carried on the business; nor that representations, as to the business character of the note in question, were made to the plaintiff. It comes back to this, was the note made or negotiated in respect of the business or separate estate of the defendant? If not, it is void. The legal incapacity of married women to make valid contracts is the same now as it was before our late statutes, unless the contracts relate to their business or separate estates. Except as to her business and her

separate estate, the attempted obligations of a married woman are void. By virtue of the statutes of 1860 and 1862, relative to the rights of married women, (*Laws of* 1860, *ch.* 90; *Laws of* 1862, *ch.* 172,) a married woman may make bargains, carry on trade or business, and perform labor and services, on her own account, and for her exclusive benefit, as if she were unmarried; and all her earnings belong to her, as her sole and separate property. (*Foster* v. *Conger,* 61 *Barb.* 145.) But, except in the instances where the transactions concern her separate business or her separate estate, her obligations are void. This principle has been often asserted. (*Hansee* v. *De Witt,* 63 *Barb.* 53. *Vansteenburgh* v. *Hoffman,* 15 *id.* 28. *Edw. on Bills,* 66–68.) Our statutes have not removed from married women their common law disabilities, except as to their transactions in their separate business, or relating to their separate estates. (*Yale* v. *Dederer,* 22 *N. Y.* 460. *Corn Exchange, Ins. Co.* v. *Babcock,* 42 *id.* 639. *Deck* v. *Johnson,* 2 *Keyes,* 348.)

The evidence fully warranted the finding of the court, that the note in question was not made or given in any business of the defendant; that neither she nor her separate estate derived any benefit therefrom; that no consideration was received by her for the note; that it is not stated in the note that she charged, or intended to charge, her separate estate with the payment thereof; that the policy was not issued, to procure which the note was made; and that the note was diverted from its intended use by Cohalen, who, for his own benefit, sold it to the plaintiff. It follows from these facts, that the note never had any validity or legal inception; and it is absolutely void. At common law a married woman cannot be a party to a bill or note; and the contracts she is enabled by statute to make, are such only as are made in the business she conducts on her own account, or such as relate to her separate property. She is not enabled to give an accommodation note, nor one unconnected with

her separate business or property ; and a person taking such a note, though *bona fide* and for value, cannot recover upon it against her. (*Corn Exchange Ins. Co.* v. *Babcock,* 57 *Barb.* 227. *Scudder* v. *Gori,* 18 *Abb. Pr.* 223. *Hansee* v. *De Witt,* 63 *Barb.,* 53. *Kelso* v. *Tabor,* 52 *id.* 125, 129.)

The judgment appealed from should be affirmed, with costs.

[First Department, General Term, at New York, May 5, 1873. *Ingraham* and *Fancher,* Justices.]