## SUPREME COURT.

ELIZABETH FAIRLEE agt. FRANCES M. BLOOMINGDALE, impleaded with PETER BLOOMINGDALE.

*Husband and wife — Law of — Business partnership between them not authorized — Contracts in the conduct of such business not enforceable against the wife.*

Business partnerships between husband and wife are not authorized by the statutes of the state of New York, and contracts in the conduct of such business are not enforceable against the wife.

Any declaration of the wife that she sustains the relation to her husband of a partner in business is not binding upon her.

The case of *Zimmerman* agt. *Erhard and Dodge* (58 *How.*, 11) criticised and not followed.

*Special Term, July,* 1884.

MOTION for a new trial on the judge's minutes.

*Mr. Hiller* and *Mr. Brown,* for plaintiff.

*Mr. Stevens* and *Mr. Mayhem,* for defendants.

WESTBROOK, *J.* — This cause was tried at the Schoharie circuit in October, 1883. The action was upon a promissory note dated April 1, 1876, by which the defendants, who were, at the date of the execution of the note, husband and wife, promised to pay "Elizabeth Fairlee (the plaintiff), or bearer, two thousand dollars, with interest, for value received." The note was signed "P. Bloomingdale," "F. M. Bloomingdale," and contained no clause charging the separate estate of the wife, who alone defended.

According to the testimony of the plaintiff, the consideration of this note was an old note made by the same parties for $1,300 and $700 cash. She further testified that the wife, at the time the money was loaned and the note in suit given, stated they needed the money for goods, that she would see it paid, that she was as much interested in the business as her

husband, and that the money was loaned by the plaintiff on the faith of such statement. She further said that the first note was executed by both defendants, that it was also for borrowed money, and that such first loan was upon a statement by the wife to the same effect as to her interest in the business, with the one made by her when the note in suit was given.

The defendants, on the other hand, testified that they had never been partners; that the first note was signed by the husband alone, and that neither at the giving of the first or the second note was there any statement by the wife that she was interested in business with the husband.

The jury was charged that if the plaintiff loaned the $700 on the representation of the wife that she was interested in the business with the husband, she was entitled to recover the $700, with interest; and if the wife had signed the first note, and the loan which the note evidenced had been made upon the faith of the wife's statement that she was interested in the business with the husband, then the plaintiff was also entitled to recover the amount of the first note included in the second; but that the plaintiff was not entitled to recover the amount of such first note unless it had been executed by the wife, and she had also, at the time of its delivery and execution, made the statement attributed to her.

The jury rendered a verdict in favor of the plaintiff for the whole amount of the note, with interest. The defendant, the wife, having made a motion for a nonsuit, which was refused, moves for a new trial upon the minutes, founded upon exceptions taken to the refusal to grant the nonsuit, and also to the charge as made.

The motion for a new trial presents this one question: Are the contracts of husband and wife, professing to be made by them as partners in business, enforceable against the wife?

The obligation upon which the action was brought did not by its language expressly charge the separate estate of the wife. It was a joint and several promissory note in the

ordinary form, signed by the husband and wife separately, by which they or either of them promised to pay the plaintiff or bearer "two thousand dollars, with interest, for value received." To recover upon such a note, therefore, as it was made long prior to the enactment of chapter 381 of the Laws of 1884, it was incumbent upon the plaintiff to show that it was given in or about a trade or business carried on by the wife, or that it was for the benefit of her separate estate (*Manchester* agt. *Sahler*, 47 *Barb.*, 155; *Bogert* agt. *Gulick*, 65 *Barb.*, 322; *Yale* agt. *Dederer*, 22 *N. Y.*, 450; *Second National Bank of Watkins*, 63 *N. Y.*, 639; *Nash* agt. *Mitchell*, 71 *N. Y.*, 199). That the note was for the benefit of the wife's business was sought to be established by her declaration made at the time of its execution and delivery, to the effect that she was equally interested with her husband in the business, which they were conducting. It was not pretended or claimed upon the trial that the business was the sole business of the wife, nor that she had any other connection therewith than as the partner of her husband. The case, therefore, presents sharply the question of the legal possibility of the existence of a mercantile partnership between husband and wife.

Such partnership, or any partnership between husband and wife would certainly have been impossible at common law. The rule then was " the husband and wife are one person in law * * *. The very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband, under whose wing, protection and cover she performs everything " (1 *Bl. Com.*, 442). The legal conclusion, which the same author states as flowing from the unity of the persons of husband and wife, that the husband cannot covenant with the wife because it " would be only to covenant with himself," clearly forbade a partnership between them, which could only exist between persons having a separate legal existence and the one capable of contracting with the other. This rule of the common law

is not questioned, but it is claimed that it has been abrogated by the statutes of this state, or at least so far abrogated as to permit the formation of a business partnership between them, and consequently the making of all agreements, contracts and covenants with each other upon which the existence of such a relation depends. Is this position sound?

The discussion of this question must begin with a recognition of the fact that our legislation has not entirely destroyed "the common law unity of husband and wife, and made them substantially separate persons for all purposes" (*Per* EARL, *J.*, *in Bertles* agt. *Nunan*, 92 *N. Y.*, 152, *see p.* 159). The wife can only make such contracts as positive enactments allow. Her ability "to make contracts is limited. Her general engagements are absolutely void, and she can bind herself by contract only as she is expressly authorized to do so by statute" (*Per* EARL, *J.*, *in the same case, p.* 160). With this recent and deliberate utterance of our court of last resort, substantially repeated in a still later case (*Coleman* agt. *Burr et al.*, 93 *N. Y.*, 17) before us, we must, to uphold a partnership between husband and wife, find a statute authorizing it.

Section 2 of chapter 90 of the Laws of 1860, is the provision relied upon to validate such an agreement. The act is entitled "An act concerning the rights and liabilities of husband and wife," and the section referred to reads thus : "A married woman may bargain, sell, assign and transfer her separate personal property and carry on any trade or business, and perform any labor or services on her sole and separate account, and the earnings of any married woman from her trade, business, labor or services shall be her sole and separate property, and may be used or invested by her in her own name."

In determining the effect of this section, a well recognized principle of interpretation must also be observed, that "it is not to be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required. The law rather infers that the act did not

intend to make any alteration, other than what is specified, and besides what has been plainly pronounced, for if the parliament had had that design, it is naturally said they would have expressed it" (*Potter's Dwarris on Statutes*, 185).

The literal interpretation of the words of the statute is that the wife is thereby authorized to " carry on any trade or business, and perform any labor or services on her sole and separate account," and when the " trade or business " and " labor or services " are carried on or performed on her " sole and separate account," the earnings therefrom then, and only then, become " her sole and separate property."

Precisely this construction was given to the act by the court of appeals of this state in *Coleman* agt. *Burr et al.* (93 *N. Y.*, 17, *see pp.* 24 *and* 25), that court saying : " The statutes referred to touch a married woman in her relation to her husband only so far as they relate to her separate property and business, and the labor she may perform on her sole and separate account. In other respects the duties and responsibilities of each to the other remain as they were at common law."

In a partnership there can be no " separate property and business," and the " labor " performed by one partner in connection therewith cannot possibly be on the " sole and separate account " of the partner performing it. There must in every such case necessarily be a joint, and not a " separate property and business " and services on joint account, and not on the " sole and separate account " of one partner.

As then the unity of husband and wife at common law forbade a business partnership between the two, as the common law has only been abrogated so far as express statutes have clearly indicated an intent to abrogate, and as all statutes abrogating the common law must be strictly construed, it may well be asked, how can a statute which authorizes a wife to hold " separate " property and conduct a " separate " business, and which only gives to her the earnings from labor performed " on her sole and separate " account, be so construed as to authorize her to hold property jointly

Fairlee agt. Bloomingdale.

with her husband, carry on with him a joint business, and give to her earnings of labor which was performed on the joint account of both ? The question carries with it its own answer. Very clearly the legislature of this state has not authorized and does not contemplate a business partnership between the two. To repeat the exact language of judge EARL in *Coleman* agt. *Burr et al.* (93 *N. Y.*, 17, 25), before quoted : " The statutes referred to touch a married woman in her relation to her husband only so far as they relate to her separate property and business, and the labor she may perform on her sole and separate account. In other respects the duties and responsibilities of each as to the other remain as they were at common law." This explicit utterance answers the question propounded and is decisive of this case. The claim of the plaintiff is that these statutes go much further, that they cover and include a partnership between husband and wife, and relate to their joint property and business, and to the labor which she may perform on their joint account. The court of appeals, however, explicitly declares that they do not, that they touch a married woman in her relations to her husband only so far as they relate to her separate property and business and the labor she may perform on her sole and separate account, while in all "other respects, the duties and responsibilities of each to the other remain as they were at common law." It is needless to add that if the relations between husband and wife are only changed so as to allow her to own a "separate" property and conduct a "separate" business, and to receive the earnings from such "separate property and business," and from "the labor she may perform on her sole and separate account," then a partnership between the two cannot exist, for in such a case the property, business and labor must always be joint and not separate ; and because joint and not separate, and therefore not covered by the statutes, the relations of husband and wife remain in regard thereto as at common law, which forbade a business partnership between them.

Fairlee agt. Bloomingdale.

Upon the trial of this cause at the circuit the counsel for the plaintiff relied upon the case of *Zimmerman* agt. *Erhard and Dodge* (58 *How.*, 11) in the New York common pleas, which was then followed by the court not, however, without grave doubts. then expressed as to its soundness, and which doubts have by subsequent examination and reflection been developed into a clear judgment, that the opinion of BEACH, J., in that case cannot be sustained and should not be followed. It was an action brought by a husband and wife for goods sold by them as partners to the defendants. The sole defense was that the action could not be maintained by the two, because the relation of partners could not exist between them. The opinion referred to is to the effect that husband and wife may legally form a business partnership, but while the result therefrom (an affirmance of a judgment rendered for the plaintiffs in the court below) was concurred in by the other two judges (VAN BRUNT and LARREMORE), yet they were careful so to state and assign other reasons for such concurrence. The premise upon which judge BEACH predicates his reasoning and conclusion is erroneous. Referring to *Adams* agt. *Curtis* (4 *Lans.*, 164) he quotes therefrom as follows: "The effect and intent of the act (*Laws of* 1880, *chap.* 90) is to remove all disabilities of coverture, so as to enable her to sue and be sued as to contracts, in all respects as though she was in fact unmarried." This, as a legal proposition, has been overruled by the court of appeals in the cases hereinbefore cited (*Bertles* agt. *Nunan*, 92 *N. Y.*, 152 ; *Coleman* agt. *Burr et al.*, 93 *N. Y.*, 17), and therefore all reasoning based upon it must be equally unsound. "All the disabilities of coverture" have not been removed. The legislation of this state has only authorized her to own "separate" property, conduct a "separate" business and receive wages for services rendered upon "her sole and separate account." As to a joint property, joint business and joint labor, her relations to her husband remain as at common law. In this present *status* of the law is also to be found the answer to a further argu-

ment of judge BEACH, that as the wife can employ the hus-
band as an agent to conduct her separate business, therefore
she may join the husband as a partner in business, as a part-
nership "is founded upon agency." The error in the reasoning
consists in not bearing in mind the fact that he was arguing
in regard to the ability of a person to contract, who had no
general power in that particular — one who could only make
such contracts and agreements as express statute law clearly
authorized. That person — a married woman — was author-
ized to own a "separate" property and to conduct a "separate"
business, and was therefore empowered to employ an agent in
its management or conduct. The agency maintained and per-
petuated the separateness of the property and business, and
was therefore not incompatible with the statute. When, how-
ever, the question relates to the formation of a partnership,
the problem to be solved is not, what ought a wife to be
authorized to do further than is expressly permitted, because
the legislation already had is based upon a certain principle
which logically should be carried further; but it is, what does
the language of the act expressly permit? Perhaps the law
as it is should be carried farther, and allow a partnership
between husband and wife. The propriety of such a thing is
for the legislature and not for the courts. The former may,
perhaps, change the common-law rights of husband and wife,
the latter cannot. They can decide that when the wife is
authorized to carry on a "separate" business and own a
"separate" property, she may employ an agent for that pur-
pose, but they are as powerless to carry the principle involved
in the legislation which conferred upon the wife power to
own and conduct a "separate" business and property to the
case of a joint business and property as they would have been
to alter and change the common law in the particular which
forbade that which the statute now permits. Innovations
upon the common law are for those in whom the power to
legislate is vested. What further should be done, because of
what has been done, is for them. The courts declare what the

law is, and whilst upholding and enforcing all legal legislative enactments, they must abide by the common law as it is, and not change its unrepealed forbiddings under the specious plea that they only carry out the spirit of an enactment. It is proper sometimes in constructing a statute to look at its spirit, but that principle does not authorize courts, when they can see that a certain reason has led to the enactment of a statute changing in some one particular the common law, still further in other particulars to alter and abrogate it. As the power to change or repeal is with the legislature, the rule of construction is that the statute was designed to go just so far, and no farther than its plain words declare. Least of all can it be assumed that legislation designed to separate the property of the wife from that of the husband, and to use it in a " separate " business, allows her to mingle her property with his, and to subject through a partnership with him to his control, his management and his contracts.

The conclusion of judge BEACH in the case referred to is at variance with that of SEDGWICK, J., in *Chamboret* agt. *Cagney* (35 *N. Y. Sup. Ct. R.*, 474, 487, 488) and those of the courts in two other states. In Massachusetts, which has a statute containing a provision substantially identical with ours, it has been held in several cases (*Lord* agt. *Parker*, 3 *Allen*, 127; *Plummer* agt. *Lord*, 5 *Allen*, 460, and 7 *Allen*, 481; *Knowles* agt. *Hull*, 99 *Mass.*, 562) that husband and wife cannot become partners in business. The reasoning of the court in these cases, and especially in the one first cited (3 *Allen*, 127; *see pages* 129 – 130) is well worthy of attention. The Massachusetts cases have also been recently followed in Indiana (*Haas et al.* agt. *Shaw et ux.*, 91 *Ind.*, 384; *Scarlett* agt. *Snodgrass*, 92 *Ind.*, 262), and in that state also a statute contains a provision very similar to ours. These authorities are of too high a character to be disregarded, and should certainly be followed by a trial judge in this state, when the reasoning by which they are supported commends itself to his judgment, and is in harmony with that of our own court of appeals.

It may, however, be said that the decisions referred to go beyond the present case and forbid a partnership between a married woman and ,a person not a husband. This is conceded; and it is yet an unsettled legal problem in this state whether or not any partnership of a married woman, previous to chapter 381 of the Laws of 1884 becoming a legal enactment, which removes all the disabilities of a married woman to make contracts, but does not "apply to any contract that shall be made between husband and wife," would be valid.

There are cases decided which seem to imply that such a thing is possible in this state, and there are others which imply a contrary doctrine. That question is not now determined. Certain it is that the words "separate" and "sole and separate," used in our statute in connection with the property, business and labor of the wife, must have some meaning. If they do not forbid a partnership in property, business or labor with all persons, because not permitting her to engage in a joint venture with any one, then they must refer to property, business and labor "separate" from the husband, held, carried on and performed on "her sole and separate account," as distinguished from that in which he is interested. Without this construction, at least, of the words, they are meaningless; and with it the impossibility of the soundness of the position assumed by plaintiff only becomes the more apparent.

This opinion might, perhaps, well stop here, but I cannot forbear to allude to another argument based upon direct adjudications of the court of appeals. A valid agreement of partnership can only be made between individuals who are independent persons, and neither owing any duty to the other in regard to such business which shall make the enforcement of the partnership agreement impossible. Is this theory of mutual independence applicable to a wife who is about to embark in a business venture with her husband? In that business the husband, at least, is interested, and it is exceedingly difficult to determine what the wife owes to him as a

duty in connection therewith, from which duty no agreement can absolve her and no partnership contract change. In *Coleman* agt. *Burr* (93 *N. Y.*, 17), the case before referred to, it was held that the promise of the husband to compensate the wife for services rendered to a member of his family, and which services were confessedly meritorious, could not be enforced for the reason that the wife, because she was a wife, owed these services to the husband. In *Whittaker* agt. *Whittaker* (52 *N. Y.*, 368), it was decided that a note given by a deceased husband to a wife for services, a part of which was "out of door work on her husband's farm, could not be enforced against his estate." If the husband is unable to make a valid promise to pay the wife for services rendered to him, and which in one case were not household duties, upon what principle can a promise to give to her one-half of the profits, or any other proportion of the profits, of *his* business, as a compensation for her services, be upheld? If the two can become partners, the husband who owns a business and has furnished its capital can, under pretense of compensating the wife for services rendered to him therein, make her his partner, and divide with her its profits, though such help may be as occasional and exceptional as that of the wife upon the farm in one of the cases above referred to. It is this inability of the wife to contract with the husband in regard to her services, which forms, and ever must form, so long as the wife owes duties of service to the husband, a barrier to a business partnership between them. That relation, as has been before stated, can only exist when the parties to it are free to form such agreements as to its profits as they may elect to make. This is vital to a partnership agreement, and the duty of service to the husband would oftentimes make his agreement with her incapable of enforcement. It is true we can conceive of bald instances of services which the wife would not be bound to render; but it is impossible to mark with accuracy the line where her duties as the husband's helpmate terminate. The pursuits and ventures

of life are so numerous and variant, and the circumstances and conditions of married life so different, that it is impossible to lay down a rule which shall define the wife's duty of service with precision; and because it cannot be done, there can be no general power to form partnerships between husband and wife, which must cover every enterprise and venture of life, which are as various as the tastes and inclinations of parties and their situations and conditions in the world. If a partnership can exist between husband and wife in the mercantile business, it can in farming or in any other. It may begin with the marriage relation, follow it in every enterprise, and terminate only with the life of one or both parties. This radical change of the *status* of married persons, subverting in fact the whole social fabric, cannot be legally effected for the reason before stated, that as the husband is unable to make a legal contract to compensate the wife for services rendered to him in and about his business, he cannot form a partnership with her, which necessarily must, in very many cases at least, involve a promise to pay for services to which he is legally entitled as husband.

Perhaps the argument to show that husband and wife cannot become business partners is already complete, but two other points are entitled to some attention. First. By section 8 of the act of 1860 (the one which it is claimed gives the power), it is declared "no bargain or contract entered into by any married woman in or about the carrying on of any trade or business under the statutes of this state, shall be binding upon her husband, or render him or his property in any way liable therefor." It can hardly be supposed, that if the legislature supposed it had under the act, of which the provision just quoted forms a part, allowed a partnership between husband and wife, it would have inserted that clause in its present form, without any exception in favor of contracts made by the wife in regard to a business in which the husband was her partner. Second. While chapter 381 of the Laws of 1884, has removed in general all disabilities of a married woman to

contract, in its second section it has been carefully said: "This act shall not affect nor apply to any contract that shall be made between husband and wife." This section is certainly significant of legislative intent. If the aim and effect of past legislation were to remove "all the disabilities of coverture," as judge BEACH assumed in *Zimmerman* agt. *Erhard and Dodge*, why was the act of 1884 passed, and why were contracts between husband and wife excepted from its operation? The passage of that statute is a legislative declaration that the wife did yet labor under some of the disabilities of coverture in the making of contracts, and that as to the husband these disabilities should still be maintained.

Having reached the conclusion that husband and wife cannot be partners in business, and that no contract made by the latter in regard to such business is enforceable against her, it is scarcely necessary to add, that any declaration by the wife to the effect that she sustained that relation to her husband is not binding upon her. In the making of contracts all parties thereto are assumed to know the law. If the wife had made the direct statement that she was the partner of her husband, the plaintiff had no right to be deceived by it (*Brewster* agt. *Striker*, 2 *N. Y.*, 19). It is somewhat questionable whether or not the evidence of the plaintiff, if found to be true, necessarily justified the legal inference that the wife thereby intended to assert the existence of a legal business partnership with the husband. Her declaration, if made, to the effect that she was equally interested in the business with her husband, was capable of another explanation, and perhaps it was erroneous to assume, as the court did in its charge, that if the jury found that such statement was made, they should find for the plaintiff. It would, perhaps, have been more accurate if the jury had been directed to find whether or not the defendant had thereby intended to assert that she was a partner in the business for which the money was loaned, and was so understood by the plaintiff to assert. Of that error, however, the plaintiff cannot complain. The case was sub-

mitted to the jury in the aspect most ·favorable to her. If, therefore, that which the plaintiff · claimed the language evidenced could not legally exist, the plaintiff was not entitled to a verdict.

It is proper to state, in conclusion, that if any doubt existed in my mind in regard to the question discussed, the motion for a new trial would be denied. Careful study of such question has, however, brought me to the clear conviction that the plaintiff was not entitled to recover against the wife, and that therefore a new trial should be granted.